# BELL v LEHMAN MANUFACTURING COMPANY, INC.

## Case No. 88-4-AC (County Court Case No. 87-391-CC11)

Fifth Judicial Circuit, Lake County

November 1, 1989

### APPEARANCES OF COUNSEL

**Gary L. Summers,** for the appellants.

**Michael R. Riemenschneider,** for appellee.

Before PETERSON, TOMBRINK, McNEAL, JJ.

### OPINION OF THE COURT

E. PETERSON, Circuit Judge.

Carol Bell, Chris Bell, Roland Bell and Virgil Bell were the defendants below and appeal from a judgment entered against them on March 31, 1988 in the amount of $6,070.77.

On April 7, 1978, Virgil L. Bell and Roland v Bell, II, registered the fictitious name of Sunshine Ceramics and Crafts. Thereafter, a retail and wholesale business of selling ceramics was conducted in Leesburg, Florida under that name. Although the fictitious name affidavit was filed at the inception of the business, the determination of the individuals having an ownership interest in the business at the time of trial became confusing as a result of Carol Bell's testimony that Chris Bell was a limited partner who joined the business after graduating from high school and the introduction into evidence of a bill of sale dated March 11, 1986 from Virgil, Carol, Roland and Chris Bell selling "all property shown on the attached inventory, together with all good will and all other tangible or intangible property connected with that business located at 1604 East Main Street, Leesburg, Florida."

One of the suppliers of Sunshine Ceramics and Crafts was the plaintiff-appellee, Lehman Manufacturing Company, Inc. in Kentland, Indiana who had sold equipment to the business on credit for a period of four or five years prior to March 11, 1986. In February of 1986, Sunshine was slow in paying an outstanding balance and Lehman accepted two checks postdated March 15, 1986 in payment of that balance as well as in payment of newly ordered equipment; the checks were honored.

On or about March 11, 1986, the business was sold to David Thompson and David Dinge with the above-mentioned bill of sale being the evidence of transfer. The real estate underlying the business site was also sold to Messrs. Thompson and Dinge by Carol, Chris, Roland and Virgil Bell. The procedures required by the Uniform Commercial Code - Bulk Transfers, Florida Statute Chapter 676.6 were followed in the sale except that Lehman Manufacturing Company, Inc. was not listed as a creditor nor given notice of the sale.

Messrs. Thompson and Dinge operated their newly acquired business in much the same way as did the Bells. The similarity in operation is shown on the attached chart of comparison of similarities, as well as the dissimilarities on a second chart. Neither the Bells nor Thompson and Dinge notified Lehman that any change of ownership occurred and business between Sunshine Ceramics and Lehman took place with Chris Bell continuing to place orders as he did when the business was operated by the Bells. One large difference, however, was that Thompson and Dinge failed to pay Lehman for some of their purchases and Sunshine Ceramics failed in business.

38

Neither the Bells nor their successors to the ceramic business gave notice to Lehman of the change of ownership until approximately September of 1986, which was after the last shipment made by Lehman to Thompson and Dinge according to the testimony of Lehman.

The trial court found that the Bells were responsible for the indebtedness incurred by Thompson and Dinge, we agree with the result, but not with the reasons expressed in the final judgment. The final judgment relied upon the theory that since Lehman was not given notice of the sale of the business assets, the bulk transfers provision in Chapter 676 of the Uniform Commercial Code was violated. The indebtedness protected by the bulk sale act is that of the seller, not the indebtedness of the buyer.

Section 676.6-109 of the bulk transfers act defines those creditors protected as the ". . . creditors of the transferer mentioned in this chapter are those holding claims based on transactions or events occurring *before* the bulk transfer . . ." (emphasis added). The indebtedness owed to Lehman by Thompson and Dinge was incurred *after* the bulk transfer. While the Bells may be liable for the indebtedness owed to Lehman, it cannot be under the theory of the bulk transfers act.

We believe that while the theory for Lehman's recovery is incorrect, the result was correct. An examination of the attached charts will reveal that the similarities of the operation of the business before and after the sale outweigh the dissimilarities with the most important similarities being that Chris Bell ordered all purchases by both businesses before and after the sale, the name of the original business and the successor was the same with only the words "& Crafts" added by the successor. Also, Lehman's bills continued to be sent to the same address and those bills continued to bear the same name of the business previously operated by the Bells when new purchases were made by the successors through the purchasing agent, Chris Bell.

While the Bells may have had no intention of misleading Lehman as to the change of ownership, it is undisputed that little effort was expended to inform Lehman of the change even though Chris Bell testified that he and Lehman both attended the same trade show. Chris Bill made the following response to the question:

"Did you happen to introduce Mr. Thompson (the buyer) to Mr. Lehman at the show as the new owner of your business?

(Chris Bell:) At the time that I was with Thompson at the show, no, Mr. Lehman was not in his booth doing the selling, so I did not get

**39**

another chance to introduce them." This was the total effort made to inform Lehman of the change of ownership.

No evidence was presented at trial that Lehman had any reasonable way of suspecting that it was not continuing to extend credit to the Bells who had established a reliable credit history after a written application for credit had been made by them. It was not until Carol Bell, in behalf of the Bells, notified Lehman of the credit risk of Messrs. Thompson and Dinge that Lehman became aware that it was extending credit to the Bells' successors. Her motive for finally giving notice to Lehman is unclear from the record, but it was obviously calculated to allow Lehman to make the decision to discontinue the extension of credit.

The failure to discover any Florida decisions squarely in point on the facts of this case probably led trial counsel to attempt to extend the rules of the bulk transfers act. We do not believe that extension of the rule is warranted, but we do believe that it is appropriate to apply the maxim that where one of two innocent parties must suffer the wrongful act of a third person, the loss shall fall upon the one who by reasonable diligence or care should have protected himself: See *Nicolls v Jennings,* 92 So.2d 829 (Fla. 1957); *Southeast Foods, Inc. v Penquin Frozen Foods,* 203 So.2d 39 (Fla. 3d DCA 1967).

The maxim should be applied in this case since the Bells' inaction to communicate notice of the sale, as well as, Chris Bell's continued actions in his capacity as contact man with Lehman for the new purchasers with the knowledge of his family-business associates certainly led to the continued extension of credit to the Bells' successors. While the notice of a bulk transfer would have sufficed to give Lehman notice of the Bells' disconnection with the business activity known as Sunshine Ceramics, the notice was not a requirement of the Uniform Commercial Code - bulk transfers.

The final point on appeal raised by the defendants, Carol Bell and Chris Bell, is that the court erred in holding them liable to Lehman since they were not co-owners of Sunshine Ceramics. The testimony of Carol Bell characterized Chris Bell as a limited partner with no ownership. A limited partner who participates in the daily business activities and who allows a creditor to extend credit to a partnership without actual knowledge that he is not a general partner is liable as a general partner. §§ 620.04 and 620.07, Fla. Stat. (1985). The record contains a letter dated March 5, 1987 and signed by all of the Bells that was addressed to the plaintiff's attorney requesting that it be considered as a written answer indicating in paragraph 6. thereof, that

40

"we owned Sunshine Ceramics", the Lehman distributorship agreement indicated that Virgil, Roland and Chris were owners, and the bill of sale conveying the personal property of the business was signed by all four of the Bells. While Mrs. Bell did testify that she had no ownership interest in the business of Sunshine Ceramics and an "affidavit under fictitious name statute" was filed in 1978 showing Virgil and Roland Bell as owners, these conflicting facts must be resolved by the trier of facts and the conflict was resolved against the Bells. An appellate court may not reweigh the evidence presented to the trial court and if there is substantial competent evidence to support the findings of the trial judge, an appellate court cannot and shall not reverse the judgment of the trial court. *Dory Auerbach Realty Co. v Waser*, 359 SO.2d 902 (Fla. 3d DCA 1978).

Affirmed as to both issues raised by the appellants, but upon a different theory of the law as to the issue raised over the application of the Uniform Commercial Code - bulk transfers.

McNEAL, TOMBRINK, JJ., Concur.

### *CHART OF COMPARISON OF DISSIMILARITIES*

| *Business Operated by The Bells* | *Business Operated by* Thompson and Dinge |
|---|---|
| Bank upon which checks in payment to Leham was drawn: | |
| Sun Bank, N.A. | Citizens National Bank of Leesburg |
| Name of Person signing checks: | |
| Carol A. Bell | Carol B. Williams |